1

2

3

4

5

6                           UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
7                                    AT SEATTLE

8    _____
                                             )
     BRIAN JAY VON ALLMEN                     )
9                                             )    Case No. C04-0550L
                            Plaintiff,        )
10                                            )
             v.                               )
11                                            )
     F/V ANDRONICA, Official No. 622780, her  )    ORDER DENYING DEFENDANT
12   engines, tackle and appurtenances, and   )    JULIA LEE FISHING COMPANY'S
                                              )    MOTION IN LIMINE REGARDING
13   F/V JULIA LEE, Official No. 664893, her  )    OPINIONS OF SAM WINDSOR
     engines, tackle and appurtenances,       )
14                                            )
                            In Rem;           )
15                                            )
     ANDRONICA, INC, and JULIA LEE            )
16   FISHING CO.,                             )
                                              )
17                          In Personam,      )
                                              )
18                          Defendants.       )
     _____)

19

20           This matter comes before the Court on "Defendant Julia Lee Fishing Company's Motion

21   in Limine Regarding Opinions of Sam Windsor" (Dkt. # 23) ("Motion"). Julia Lee Fishing Co.

22   ("JLF") requests the exclusion of certain opinions of Andronica Inc.'s expert, Sam Windsor.

23   See Motion at 2. Mr. Windsor is a mechanical engineer. JLF expects Mr. Windsor to testify

24   that the amount of force exerted when the F/V Andronica allided with the F/V Julia Lee was

25   unlikely to cause the filament in the F/V Julia Lee's anchor light to break. JLF argues that Mr.

26

27   ORDER DENYING DEFENDANT JULIA LEE
     FISHING COMPANY'S MOTION IN LIMINE
28   REGARDING OPINIONS OF SAM WINDSOR  - 1

1

2   Windsor's opinions are speculative and inherently unreliable, thus they do not meet the

3   standards set out in Daubert v. Merrill Dow Pharm., Inc., 509 U.S. 579 (1993).

4          Fed. R. Evid. 702 provides:

5              If scientific, technical, or other specialized knowledge will assist the trier
               of fact to understand the evidence or to determine a fact in issue, a
6              witness qualified as an expert by knowledge, skill, experience, training,
               or education, may testify thereto in the form of an opinion or otherwise.
7
    To be admissible, expert testimony must qualify as "scientific knowledge."  The expert's
8
    opinion must be based on the scientific method and must be something more than subjective
9
    belief and/or unsupported speculation.  See Daubert, 509 U.S. at 590.  The testimony must also
10
    be "helpful," such that a valid scientific connection between the opinion offered and the issues
11
    of the case exists.  See Daubert, 509 U.S. at 591-92.  "The inquiry envisioned by Rule 702 is . . .
12
    a flexible one.  Its overarching subject is the scientific validity - and thus the evidentiary
13
    relevance and reliability - of the principles that underlie a proposed submission.  The focus, of
14
    course, must be solely on principles and methodology, not on the conclusions that they
15
    generate."  Daubert, 509 U.S. at 594-95.
16
           Simplified down to laymen's terms, Mr. Windsor argues that the force of the impact
17
    between the two vessels, when measured up the mast to the anchor light, was less than the force
18
    that rough seas can exert upon the mast.  See Windsor Report, Dkt. # 21, Ex. 6 at 5-6.  Mr.
19
    Windsor came to his determination by calculating what force would be necessary to bend or
20
    deform the aluminum bulwark on the F/V Julia Lee.  Mr. Windsor assumed the bulwark was
21
    constructed out of the highest grade marine aluminum, thus requiring a greater amount of force
22
    to bend than lesser grade aluminum.  The calculations are based on Newton's Laws of Motion.
23
    By using this method, Mr. Windsor was able to determine the maximum force of the impact that
24
    corresponds with the damage that occurred on the F/V Julia Lee.  Mr. Windsor's conclusion,
25
    based on these calculations, was that the anchor light was subjected to a maximum of 1.2 g's
26

27  ORDER DENYING DEFENDANT JULIA LEE
    FISHING COMPANY'S MOTION IN LIMINE
28  REGARDING OPINIONS OF SAM WINDSOR  - 2

1

2   (1.2 times the force of gravity).  Moreover, Mr. Windsor concludes that the force on the anchor

3   light was probably less than 1.2 g's.  Id. (noting the actual force on the light resulting from the

4   collision was "less than 1.2 g's and probably closer to 1/5 this value").  Finally, Mr. Windsor

5   states that the usual design practices in the industry "provide a minimum resistance to dynamic

6   forces equal to at least 2 g's . . . ."  Id. at 2.  In other words, a standard anchor light should be

7   able to withstand the impact suffered by the F/V Julia Lee.

8        JLF's challenge is centered on Mr. Windsor's failure to: 1) take the F/V Julia Lee's speed

9   into consideration; 2) take the F/V Julia Lee's weight into consideration; 3) actually board the

10  vessels or review their design specifications; and 4) conduct independent tests on the vessels and

11  the failed light bulb.

12       The Court finds that the opinions of Mr. Windsor are admissible.  Using mathematical

13  calculations related to tolerances and force, he opines that the amount of force that struck the

14  F/V Julia Lee was less than the force that rough seas can exert on a vessel.  Therefore, according

15  to Mr. Windsor, it is unlikely that the allision caused the filament in the anchor light to break.

16  Although some of the assumptions and calculations on which Mr. Windsor's opinion is based

17  are elementary and may be contested during cross-examination, the logic and methodology of

18  the analysis is scientifically sound.  See Daubert, 509 U.S. at 590.  To the extent that there are

19  assumptions that may be overly simplistic or omissions which, if included, may have made the

20  conclusions more complete, these assumptions and omissions go to the weight of the evidence,

21  not its admissibility and can be addressed on cross-examination.[1]

22

23

24

_____

25       [1] The possibility that, notwithstanding Mr. Windsor's conclusions, the filament broke due to the
    collision, perhaps because it was weakened by age, goes to the weight of the evidence, not the
26  admissibility of Mr. Windsor's scientific conclusions.

27  ORDER DENYING DEFENDANT JULIA LEE
    FISHING COMPANY'S MOTION IN LIMINE
28  REGARDING OPINIONS OF SAM WINDSOR  - 3

1

2      For the foregoing reasons, Defendant Julia Lee Fishing Company's Motion in Limine

3   Regarding Opinions of Sam Windsor (Dkt. # 23) is DENIED.

4

5          DATED this 19th day of May, 2005.

6

7                                    _____
                                      Robert S. Lasnik
8                                     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   ORDER DENYING DEFENDANT JULIA LEE
     FISHING COMPANY'S MOTION IN LIMINE
28   REGARDING OPINIONS OF SAM WINDSOR  - 4