1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
7                                   AT SEATTLE

8    _____
                                            )
9    BRIAN JAY VON ALLMEN,                  )
                                            )        Case No. C04-0550L
10                          Plaintiff,      )
                                            )
11            v.                            )
                                            )
12   F/V ANDRONICA, Official No. 622780, her)
     engines, tackle and appurtenances, and )
13                                          )
     F/V JULIA LEE, Official No. 664893, her)        MEMORANDUM AND DECISION
14   engines, tackle and appurtenances,     )
                                            )
15                          *In Rem*;       )
                                            )
16   ANDRONICA, INC, and JULIA LEE          )
     FISHING CO.,                           )
17                                          )
                            *In Personam*,  )
18                                          )
                            Defendants.     )
19   _____)

20                                **INTRODUCTION**

21           This matter was heard by the Court in a two-day bench trial commencing on May

22   31, 2005 and ending on June 2, 2005.  Plaintiff Brian Von Allmen is seeking damages for

23   injuries suffered when the F/V Andronica ("Andronica") allided with the F/V Julia Lee ("Julia

24   Lee") on the Naknek River in Alaska.  Defendants, having settled all hull claims between

25   themselves, assert cross-claims against each other for contribution and indemnity for damages

26   awarded to plaintiff.  The trial pertained only to issues of liability.  The Court has considered the

MEMORANDUM AND DECISION

1  evidence presented at trial, exhibits admitted into evidence, the arguments of counsel and, being

2  fully advised, now makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

4  1. It is undisputed that on July 6, 2001, the Andronica, a 92 foot tender vessel, allided

5  with the Julia Lee, a 32 foot gillnet fishing vessel, while the Julia Lee was at anchor in the

6  Naknek River near Naknek, Alaska.  The allision took place between 3:00 - 3:30 a.m.

7  2.  The weather conditions outside the vessel on the morning of July 6, 2001, were mostly

8  clear with no significant impairments to visibility.

9  3.  There was conflicting testimony as to the lighting conditions on July 6, 2001.  The

10  Court finds that the conditions were dark, but not "pitch black."  This finding is supported by the

11  testimony of plaintiff and Captain Alotrico who both were able to read the name "Andronica" on

12  the vessel's stern as it moved away from them.  Both testified that it was definitely not pitch

13  black at that time of the morning.  Expert testimony also supports the conclusion that pitch black

14  conditions at that time of the morning were unlikely.  Conversely, Brian Carroll testified that it

15  was too dark to see.  However, Mr. Carroll came from the brightly lit galley into the unlit

16  wheelhouse where his night vision had not yet adjusted to the lower light levels.  This leaves

17  only Captain Howell, who testified that he could see about three tenths of a mile ahead of him.

18  This also indicates that conditions were dark, but not pitch black.

19  4.  The Andronica proceeded up the Naknek River towards Leader Creek at

20  approximately 1 knot faster than the speed of  the 3-knot flooding tide.  This is the slowest speed

21  the Andronica can proceed while safely maintaining steerage.

22  5.  The Julia Lee was anchored in an appropriate location along the north side of the

23  transit lane. While there was conflicting testimony, the Court finds the opinions of expert

24  Captain Dudley and Captain Alotrico more compelling than Captain Howell's estimate as to the

25  location of the allision.

26  6.  There was controverted testimony as to whether the Julia Lee's anchor light was

illuminated at the time of the allision.  It is undisputed that the anchor light switch was in the "on" position after the accident and that the filament in the bulb was broken.  No witness could affirmatively testify that the anchor light was on.  Captain Alotrico did not check to see that the light was illuminated after flipping the switch to the "on" position.  Moreover, Captain Alotrico last verified that the light was properly functioning three weeks prior to the allision.  Having reviewed all the testimony and evidence, the Court finds that it was more likely that the anchor light on the Julia Lee was not illuminated at the time of the allision.

7.  The Julia Lee's anchor light was affixed to the vessel in a manner that precluded 360 degree visibility.

8.  Captain Howell was using his radar.  There is no evidence that the radar system malfunctioned.  He conceded that he did not know why he did not see the Julia Lee on his radar. The Court finds that Captain Howell simply did not notice the Julia Lee on his radar.

9.  Neither vessel posted a lookout.

10.  Captain Howell failed to notice the Julia Lee as it passed by the starboard wheelhouse window after the allision.

11.  Captain Howell is very experienced navigating the Naknek River and operating the Andronica.  He conceded that he was in very close quarters as he passed the anchored boats. The Court finds that Captain Howell was inattentive, made mistakes related to the use of radar, and failed to post a lookout.

### CONCLUSIONS OF LAW

**A.  Negligence Under General Maritime Law**

Liability for damages is placed upon the ship or ships whose fault caused the injury.  The Pennsylvania, 86 U.S. 125, 136 (1873).  The standard for negligence under general maritime law is similar to traditional negligence.  It is the failure to exercise the standard of care that a reasonable seaman would have exercised in the same situation.  In addition, negligence can be based on statutory fault.  When a vessel violates a statutory duty or rule, the violator must

prove the act or omission not only did not cause the collision, but also that it could not have contributed to the collision (hereinafter, "The Pennsylvania Rule").  See id.  The party statutorily at fault must prove with clear and convincing evidence that the violation could not reasonably be held as the proximate cause of the collision.  See Pac. Tow Boat Co. v. States Marine Corp., 276 F.2d 745, 749 (9th Cir. 1960).  The statutory "Rules of the Road" are governed by the International Regulations for Prevention of Collisions at Sea ("COLREGS"), 33 U.S.C. § 1602, et seq, and the Inland Navigation Rules ("Inland Rules"), 33 U.S.C. §§ 2001-2073.

### 1.  Negligence of the F/V Andronica

#### a.  Rule 6 - Safe Speed

Inland Rule 6 provides that "[e]very vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions."  33 U.S.C. § 2006.  The Rule lists several factors to be considered including: 1) visibility; 2) traffic density and concentration; 3) manageability of vessel; 4) presence of background lights at night; 5) state of wind, sea, current, and navigational hazzards; and 6) draft in relation to depth of water.  There are additional requirements related to vessels, including the Andronica, that are equipped with operational radar.

The Andronica was proceeding one knot faster than the flooding tide as it navigated up the Naknek River.  One knot is the slowest speed the Andronica can proceed without losing the ability to steer safely.  Therefore, the speed of the Andronica was not a violation, in and of itself, of Rule 6.  The allision was not caused by the speed of the Andronica, but instead because of Captain Howell's inattentiveness and his decision to not utilize an additional lookout.

#### b.  Rule 5 - Lookout

Inland Rule 5 provides that "[e]very vessel shall at all times maintain a proper

MEMORANDUM AND DECISION                    -4-

1  look-out by sight and hearing as well as by all available means appropriate in the prevailing

2  circumstances and conditions so as to make a full appraisal of the situation and of the risk of

3  collision." Id. at § 2005.  The Andronica violated Rule 5.  The Naknek River was by all

4  accounts extremely crowded with other gillnetters and tenders.  The conditions were dark,

5  though not pitch black.  Darkness therefore limited visibility.  There were numerous lights

6  dotting the river and the southern shore as Captain Howell navigated up river.  Under the

7  circumstances there was simply too much for Captain Howell to look at and attend to in order to

8  make a "full appraisal of the situation."  He was monitoring his radar, depth meter, and serving

9  as his own lookout while navigating the vessel in dark and extremely crowded conditions.

10  Moreover, Captain Howell had two crew members, Brian Carroll and Terry Rosendahl, awake

11  in the galley at the time.  Either of those individuals could have aided Captain Howell by acting

12  as a lookout either on the bow or in the wheelhouse.  Therefore, under all of the prevailing

13  circumstances, the Andronica is at fault for failing to post a proper lookout.

14          **c. Negligence**

15          Captain Howell was also negligent under general maritime law, aside from

16  statutory fault, for failing to see the Julia Lee before the allision occurred.  Captain Howell

17  failed to see the Julia Lee as he approached its anchored position.  The light should have been

18  sufficient for Captain Howell to, at a minimum, recognize an obstruction ahead of him.

19  Moreover, by Captain Howell's own admission, he does not know why he did not see the Julia

20  Lee on his radar.  There was no indication that the radar was malfunctioning or improperly

21  calibrated.  Captain Howell simply did not see the Julia Lee when he should have.  Additionally,

22  Captain Howell should have seen the Julia Lee as it passed across the starboard side of the

23  Andronica after the allision.  The Julia Lee's mast and antennas should have been visible out

24  Captain Howell's starboard wheelhouse window as they passed mere feet from him.  These facts

25  indicate that Captain Howell was inattentive and thus, negligent in his operation and navigation

26  of the Andronica.

1
2
3 **2. Negligence of the F/V Julia Lee**

4     **a. Rule 9(g) - Narrow Channels**

5     Inland Rule 9(g) provides "[a]ny vessel shall, if the circumstances of the case

6 admit, avoid anchoring in a narrow channel."  33 U.S.C. § 2009.  See also 44 U.S.C. § 409.  The

7 Julia Lee anchored in an appropriate location on the north side of the transit lane.  There was

8 ample room for the Andronica to pass through the deep water of the transit lane without alliding

9 with the Julia Lee.  Therefore, there is no violation of Rule 9(g).

10     **b. Rule 5 - Lookout**

11     Rule 5 is located in the section of the Inland Rules entitled "Steering and Sailing

12 Rules."  See 33 U.S.C. § 2005.  The rules in this section apply to vessels underway, not vessels

13 at anchor.  As such, Rule 5 is inapplicable to the Julia Lee.

14     Even if Rule 5 did apply to vessels at anchor, the Julia Lee is still not in violation

15 of the Rule.  It is well accepted the vessels properly anchored outside of transit lanes need not

16 provide a lookout at all times.  As the Julia Lee was properly anchored, it had the right to rely on

17 other vessels avoiding it without having to post a lookout throughout the night.  Inland Rule 2

18 also provides that "[n]othing in these Rules shall exonerate any vessel . . . from the

19 consequences of . . . the neglect of any precaution which may be required by the ordinary

20 practice of seamen, or by the special circumstances of the case."  Id. at § 2002.  Again, as the

21 Julia Lee was properly anchored, the catchall provision found in Rule 2 is inapplicable and does

22 not necessitate the Julia Lee taking extraordinary measures to protect itself while at anchor.

23     **c. Rule 30(c) - Deck Lights**

24     Inland Rule 30(c) provides that "[a] vessel at anchor may . . . also use the available

25 working or equivalent lights to illuminate her decks."  Id. at § 2030(c) (emphasis added).  The

26 Rule, as applied to the 32 foot long Julia Lee, is not stated in mandatory terms.  Therefore, the

1   Julia Lee is not in violation of the Rule for failing to illuminate its deck lights.  Moreover, given
2   that the Julia Lee was properly anchored, there was no need for extraordinary measures under
3   Rule 2, because the "ordinary practice of seamen" would not have required illuminating the deck
4   lights.

5   ### d.  Rule 30(b) - The "All-Round" Light

6   Inland Rule 30(a) requires that a vessel at anchor display an anchor light.  Id. at
7   § 2030(a).  Rule 30(b) explains "[a] vessel of less than 50 meters in length may exhibit an all-
8   round light where it can best be seen instead of the lights prescribed in paragraph (a) of this
9   Rule.  Id. at § 2030(b).  The anchor light on the Julia Lee is attached to the mast in a fashion that
10  obstructs its visibility for vessels approaching the Julia Lee from behind.  Therefore, the Julia
11  Lee is in violation of the Rule.  The burden then switches to the Julia Lee to prove that the
12  violation could not have contributed to the allision.  See The Pennsylvania, 86 U.S. at 136.

13  The Julia Lee overcomes the burden under the Pennsylvania Rule.  The view of
14  the anchor light is only obstructed from the rear.  The allision between the Julia Lee and the
15  Andronica occurred starboard to starboard.  In other words, the allision was of the "head-on"
16  variety.  Captain Howell approached the Julia Lee from the Julia Lee's bow, thus the view of the
17  light would not have been obstructed.  Therefore, the Julia Lee is not at fault for the allision
18  based on the violation of the "all-round" light requirement in Rule 30(b).

19  ### e.  Rule 30(b) - Anchor Light

20  Inland Rules 30(a) and (b) require vessels at anchor to display a white "anchor"
21  light from sunset to sunrise.  "The law as to lights is imperative . . . . The master, or officer in
22  charge, must know that the lights are continually up."  The Conoho, 24 F. 758, 760 (D. Va.
23  1885).  The Julia Lee failed to do so and is thus in violation of the Rule.  It cannot overcome the
24  burden under the Pennsylvania Rule.  It is possible that Captain Howell would have seen the
25  anchor light, had it been illuminated, and initiated maneuvers that would have avoided the
26  allision.  Therefore, it is possible that the failure to properly illuminate the anchor light

MEMORANDUM AND DECISION                    -7-

1   contributed to the allision.   See The Pennsylvania, 86 U.S. at 136.

2

3        **3.  The Oregon Rule vs. The Pennsylvania Rule**

4               When a moving vessel allides with an anchored vessel or stationary object, the

5   moving vessel is presumed to be at fault.  The Oregon, 158 U.S. 186, 192-93 (1895).  The

6   presumption is strong and difficult for the moving vessel to overcome.  Wardell v. Dept. of

7   Transp., 884 F.2d 510, 512-13 (9th Cir. 1989).  It places the burden of proof on the moving

8   vessel to show either that the moving vessel was without fault or that the allision was occasioned

9   by the fault of the anchored vessel.  Carr v. Hermosa Amusement Corp., Ltd., 137 F.2d 983, 985

10  (9th Cir. 1943).

11              The Eleventh Circuit, in a case with similar facts, summarized the law when both

12  the moving vessel and the anchored vessel are at fault.  Sunderland Marine Mut. Ins. Co., Ltd. v.

13  Weeks Marine Constr. Co., 338 F.3d 1276 (11th Cir. 2003).

14              The general rule is that the presumption of fault for the allision lies
              against the moving vessel.  This burden of proof shifts, however, to the
15             stationary vessel when the stationary vessel is in violation of a statutory
              rule intended to prevent accidents.  The stationary vessel then bears the
16             burden of proof in showing that its statutory violation could not have
              been a contributory cause of the allision [under the Pennsylvania Rule].
17

18  Id. at 1279 (citations omitted).  In Sunderland Marine, a shrimp boat allided with an unlit barge

19  that was anchored outside a transit lane.  The anchored vessel was found in violation of Inland

20  Rule 30 for failing to display anchor lights.  Id. at 1278.  The Eleventh Circuit affirmed the trial

21  court's decision apportioning damages between each because both vessels had violated statutory

22  duties.  The same reasoning is applicable here.  The Andronica is at fault for failing to post a

23  lookout, as well as for Captain Howell's negligent navigation.  The Julia Lee is at fault for

24  failing to properly illuminate its anchor light.

        **4.  Allocation of Damages**

25              In United States v. Reliable Transfer Co. the Supreme Court held:

26

MEMORANDUM AND DECISION                -8-

> When two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault.

421 U.S. 397, 411 (1975). Moreover, "[u]nder the comparative negligence standard inaugurated in <u>Reliable Transfer</u>, it is culpability, not degree of causation, by which liability is apportioned between wrongdoers." <u>Alaska Packers Ass'n, Inc. v. O/S East Point</u>, 421 F. Supp. 48, 53 (W.D. Wash. 1976) (citations omitted).  Here the majority of the fault lies with the Andronica.  Captain Howell's inattentiveness and failure to post a lookout caused him to fail to see a vessel that he simply should have seen.  Conversely, the Julia Lee was anchored in a proper location and, with the exception of the anchor light, abiding by all applicable rules.  Under the circumstances, the Julia Lee should not have been struck regardless of whether the anchor light was on or off.  Therefore, the Court finds the Andronica to be 75% at fault and the Julia Lee to be 25% at fault.

**B.  Jones Act Negligence**

Under the Jones Act, 46 U.S.C. § 688, the basis for a ship owner's liability is grounded in negligence: the mere fact of injury will not suffice.  The quantum of evidence necessary to support a finding of Jones Act negligence is less than that required for common law negligence: "a seaman must demonstrate only that his employer's negligence played any part, even the slightest, in producing his injury" to sustain a finding of liability.  <u>Ribitzki v. Canmar Reading & Bates, Ltd. Partnership</u>, 111 F.3d 658, 662 n.3 (9th Cir. 1997).  Nevertheless, plaintiff has the burden of establishing all four elements of a Jones Act claim, namely duty, breach, notice, and causation.  <u>Havens v. F/T Polar Mist</u>, 996 F.2d 215, 218 (9th Cir. 1993).

Under <u>Kernan v. American Dredging Co.</u>, 355 U.S. 426 (1958), and its progeny, a statutory violation of a safety regulation entitles a seaman to recover from his employer under

MEMORANDUM AND DECISION                    -9-

the Jones Act.  See also Cook v. Ancich, 119 F. Supp.2d 1118, 1120 (W.D. Wash. 2000).  The Jones Act entitles seamen to the system of liability granted to railroad workers under the Federal Employers Liability Act.  Kernan, 355 U.S. at 436-37.  This includes "negligence per se if a statutory violation 'contributes in fact to the death or injury . . . without regard to whether the injury flowing from the breach was the injury the statute sought to prevent.'"  Ancich, 119 F. Supp.2d at 1120 (citing Kernan, 355 U.S. at 433).  In the case of Coast Guard regulations, the Ninth Circuit has held that five elements must be met: 1) a violation of a Coast Guard regulation; 2) plaintiff is in the class of intended beneficiaries of the regulation; 3) the injury was of the type the regulation was designed to protect; 4) the violation was unexcused; and 5) causation.  See Fuszek v. Royal King Fisheries, Inc., 98 F.3d 514, 517 (9th Cir. 1996).

Here, the Julia Lee's failure to provide a functioning anchor light is a statutory violation that creates negligence per se under the Jones Act.  It is a clear violation, meant to protect seamen from collisions at sea.  The Julia Lee's failure to illuminate the anchor light is unexcused.  Accordingly, under the "slight" causation standard of Ribitzki, the Julia Lee is liable for injuries suffered by plaintiff.  See Ribitzki, 111 F.3d at 662 n.3.

**C. Unseaworthiness**

A vessel is unseaworthy if the ship, its appurtenances and equipment, or its crew is not reasonably fit for its intended use.  See, e.g., Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 499 (1971).  Although the shipowner's duty to provide a seaworthy vessel is absolute (*i.e.*, actual knowledge, constructive knowledge, or negligence need not be proven), the duty does not require that the shipowner provide an accident-free ship, just one that is reasonably fit for its intended service.  See, e.g., Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550 (1960).

A vessel which lacks a functioning anchor light is not reasonably fit for its intended use.  See The Conoho, 24 F. at 760 ("The law of lights is imperative").  By sailing a vessel that was unable to illuminate its anchor light, the Julia Lee put its crew and other vessels in danger.  It is thus liable for unseaworthiness.

1
2
3                                    **CONCLUSION**
4            For all of the foregoing reasons, plaintiff has proven that the Julia Lee was
5    negligent under the Jones Act, general maritime law, and that it was unseaworthy.  In addition,
6    plaintiff has proven that the Andronica was negligent under general maritime law.  In regards to
7    the comparative fault of the two vessels, the Court finds the Andronica 75% at fault and the Julia
8    Lee 25% at fault.  The case shall now proceed to trial to determine damages consistent with the
9    above findings of liability.
10
11           DATED this 8th day of June, 2005.
12
13
14                                           Robert S. Lasnik
                                             United States District Judge
15
16
17
18
19
20
21
22
23
24
25
26

MEMORANDUM AND DECISION                    -11-